UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA-WESTERN DIVISION

| | |
|---|---|
| PATRICIA ANN R.,[1] | Case No. CV 20-02212-AS |
| Plaintiff, | **MEMORANDUM OPINION AND** |
| v. | **ORDER OF REMAND** |
| ANDREW SAUL, Commissioner of Social Security, | |
| Defendant. | |

For the reasons discussed below, IT IS HEREBY ORDERED that, pursuant to Sentence Four of 42 U.S.C. § 405(g), this matter is remanded for further administrative action consistent with this Opinion.

---

[1] Plaintiff's name is partially redacted in accordance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

**PROCEEDINGS**

On March 6, 2020, Plaintiff filed a Complaint seeking review of the Commissioner's denial of her application for Supplemental Security Income. (Dkt. No. 1). The parties have consented to proceed before the undersigned United States Magistrate Judge. (Dkt. Nos. 11-12). On September 8, 2020, Defendant filed an Answer along with the Administrative Record ("AR"). (Dkt. Nos. 15-16). On December 2, 2020, the parties filed a Joint Stipulation ("Joint Stip.") setting forth their respective positions regarding Plaintiff's claim. (Dkt. No. 17).

The Court has taken this matter under submission without oral argument. See C.D. Cal. L.R. 7-15.

**BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION**

On April 20, 2016, Plaintiff filed an application for Supplemental Security Income, alleging a disability onset date of March 1, 2010. (See AR 106-202).[2] Plaintiff's application was denied initially on August 22, 2016, and on reconsideration on November 18, 2016. (See AR 86, 102, 109-14).

On October 29, 2018, Plaintiff, represented by counsel, testified at a hearing before Administrative Law Judge ("ALJ") Diana Coburn. (AR

---

[2] Plaintiff previously filed an application for Supplemental Security Income on January 31, 2013, alleging the same disability onset date. On August 27, 2015, the Administrative Law Judge determined that Plaintiff, who had, *inter alia*, several severe mental impairments (a bipolar disorder, schizophrenia, a depressive disorder and borderline intellectual functioning), had not been under a disability, as defined in the Social Security Act, since January 31, 2013. (See AR 58-67).

39-49, 51-53). The ALJ also heard testimony from vocational expert ("VE") Sharon Spaventa. (AR 49-51). On December 12, 2018, the ALJ issued a decision denying Plaintiff's application. (See AR 18-27). Applying the five-step sequential process,[3] the ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since April 20, 2016, the application filing date. (AR 20). At step two, the ALJ determined that Plaintiff had the following severe impairments: "cystitis; a bipolar disorder; schizophrenia; a post-traumatic stress disorder; depression; borderline intellectual functioning; and polysubstance abuse." (AR 21). At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in the regulations. (AR 21).[4]

At step four, the ALJ determined that Plaintiff had the RFC[5] to perform light work[6] with the following limitations: "able to perform postural activities occasionally; limited to simple, routine, and

---

[3] The ALJ initially found that the presumption of continuing non-disability arising from the previous decision of the Administrative Law Judge did not apply because "the criteria for evaluating mental health impairments have changed[.]" (AR 20).

[4] The ALJ specifically considered whether Plaintiff's impairments meet the criteria of Listing 12.03 (schizophrenic, paranoid, and other psychotic disorders), 12.04 (depressive and bipolar related disorders), 12.06 (anxiety and obsessive-compulsive disorders), 12.11 (neurodevelopmental disorders) and 12.15 (trauma and stressor related disorders). (AR 21-24).

[5] The RFC is what a claimant can still do despite existing exertional and nonexertional limitations. See 20 C.F.R. § 416.945(a)(1).

[6] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 416.967(b).

repetitive tasks but not at a production rate of pace, such as assembly-line work; limited to simple work-related decision making; able to interact frequently with supervisors and coworkers; and able to interact occasionally with the general public." (AR 24-25).

The ALJ then found that Plaintiff did not have any past relevant work. (AR 25). At step five, the ALJ determined, based on Plaintiff's age, education, work experience, RFC, and the VE's testimony, that there were jobs existing in significant numbers in the national economy that Plaintiff could have performed. (AR 26). Accordingly, the ALJ concluded that Plaintiff had not been under a disability, as defined in the Social Security Act, since April 20, 2016, the application filing date. (AR 26-27).

The Appeals Council denied Plaintiff's request for review on January 17, 2020. (AR 1-5). Plaintiff now seeks judicial review of the ALJ's decision, which stands as the final decision of the Commissioner. 42 U.S.C. §§ 405(g), 1383(c).

**STANDARD OF REVIEW**

This Court reviews the Commissioner's decision to determine if it is free of legal error and supported by substantial evidence. See Brewes v. Comm'r, 682 F.3d 1157, 1161 (9th Cir. 2012). "Substantial evidence" is more than a mere scintilla, but less than a preponderance. Garrison v. Colvin, 759 F.3d 995, 1009 (9th Cir. 2014). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. To determine whether substantial evidence

supports a finding, a court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." Id. Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006)(inferences "reasonably drawn from the record" can constitute substantial evidence.). As a result, "[i]f the evidence can support either affirming or reversing the ALJ's conclusion, [a court] may not substitute [its] judgment for that of the ALJ." Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006).

**PLAINTIFF'S CONTENTION**

Plaintiff alleges that the ALJ erred in rejecting the opinion of Plaintiff's treating psychiatrist. (See Joint Stip. at 4-10, 14-15).

**DISCUSSION**

After consideration of the record as a whole, the Court finds that Plaintiff's claim of error warrants a remand for further consideration.

**A.    Legal Standard For ALJ's Assessment of Medical Opinions**

An ALJ must take into account all medical opinions of record. 20 C.F.R. § 416.927(b).[7] "Generally, a treating physician's opinion carries

---

[7]    Since Plaintiff filed her application before March 27, 2017, 20 C.F.R. § 416.927 applies. For an application filed on or after March 27, 2017, 20 C.F.R. § 416.920c would apply. 20 C.F.R. § 416.920c changed how the Social Security Administration considers medical opinions and prior administrative medical findings, eliminated the use of the term "treating source," and eliminated deference to treating source medical opinions. See 20 C.F.R. § 416.920c(a); L.R. v. Saul, 2020 WL 264583, at *3 n.5 (C.D. Cal. Jan. 17, 2020); Golightly v. Saul, (continued...)

more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." Holohan v. Massanari, 246 F.3d 1195, 1202 (9th Cir. 2001); see also Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995). The medical opinion of a treating physician is given "controlling weight" so long as it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record." 20 C.F.R. § 416.927(c)(2). "When a treating doctor's opinion is not controlling, it is weighted according to factors such as the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability, and consistency of the record." Revels v. Berryhill, 874 F.3d 648, 654 (9th Cir. 2017); see also 20 C.F.R. § 416.927(c)(2)-(6).

If a treating or examining doctor's opinion is not contradicted by another doctor, the ALJ can reject the opinion only for "clear and convincing reasons." Carmickle v. Commissioner, 533 F.3d 1155, 1164 (9th Cir. 2008); Lester v. Chater, 81 F.3d at 830 (9th Cir. 1995). If the treating or examining doctor's opinion is contradicted by another doctor, the ALJ must provide "specific and legitimate reasons that are supported by substantial evidence in the record" for rejecting the opinion. Carmickle, 533 F.3d at 1164; Lester, 81 F.3d at 830-31. "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his

---

[7] (...continued)
2020 WL 1916874, at *6 n.5 (D. S.C. April 7, 2020); see also 82 Fed. Reg. 5844, at 5852 (January 18, 2017); 81 Fed. Reg. 62560, at 62573-74 (Sept. 9, 2016)

interpretation thereof, and making findings." Trevizo v. Berryhill, 871 F.3d 664, 675 (9th Cir. 2017)(citation omitted). Finally, when weighing conflicting medical opinions, an ALJ may reject an opinion that is conclusory, brief, and unsupported by clinical findings. Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2015).

**B.   Dr. Gorsky's Opinion**

From August 26, 2013 to September 25, 2018, Plaintiff was treated at Long Beach Adult Mental Health Center primarily for various psychiatric issues. (See AR 301, 306-18, 496-526, 1114-38, 1148, 1158-61). Olena Gorsky, M.D., a psychiatrist, treated Plaintiff on a regular basis from April 2015 tp September 2018. (See AR 501-20, 1124-38, 1158-61).

On July 6, 2017, Dr. Gorsky completed an mental status evaluation of Plaintiff, setting forth his general observations, and Plaintiff's present illness, her past history of mental disorders, family, social and environmental history, mental status examination, current level of functioning, and current medications. (See AR 1106-12). Dr. Gorsky diagnosed Plaintiff with bipolar disorder with psychotic features, post-traumatic stress disorder and cannabis use disorder/alcohol use disorder, and stated that Plaintiff's prognosis was poor. (See AR 1106-09). In a Medical Source Statement of Ability to Do Work-Related Activities (Mental), Dr. Gorsky opined, *inter alia*, that Plaintiff had the following moderate[8] or marked[9] limitations (excluding limitations

---

[8]   "Moderate" was defined as follows: "There is moderate limitations in this area, the deficit is significant. Deficiencies
(continued...)

7

from alcohol and/or drug abuse): moderate in the ability to understand, remember and carry out detailed instructions and to make judgments on simple work-related decisions; marked in the ability to make judgments on complex work-related decisions; moderate in the ability to maintain attendance and punctuality during a workday and workweek, to interact appropriately with the public, supervisors and co-workers; marked in the ability to perform at a consistent pace without more than regular breaks in a workday, to sustain an ordinary routine without special supervision, and to respond appropriately to changes in a routine work setting; a poor ability to adapt to stress; and limited in ability to engage in socially appropriate behavior and to make decisions. (See AR 1110-11).

**C. The ALJ's Findings**

The ALJ gave "little weight" to Dr. Gorsky's opinion, finding that it was not supported by the objective medical evidence, ("the medical record does not seem to document clinical signs and findings consistent with the degree of limitations assessed by Dr. Gorsky") and that "Dr. Gorsky does not address the claimant's history of medication non-compliance and substance abuse, circumstances apparently critically tied to the claimant's mental problems." (See AR 21-22).

---

[8] (...continued) could not be ignored by a supervisor, coworker, peer, or the public. Performance is more than one standard deviation from the mean."

[9] "Marked" was defined as follows: "There is serious limitation in this area. The ability to function [ ] seriously interferes with the ability to function independently, appropriately, effectively, and on a sustained basis. Performance is more than two standard deviations from the mean."

Since Dr. Gorsky's opinion that Plaintiff had marked limitations with respect to her ability to perform at a consistent pace without more than regular breaks in a workday, to sustain an ordinary routine without special supervision, and to respond appropriately to changes in a routine work setting was not contradicted by the opinions of other physicians, the "clear and convincing" standard applies to the ALJ's rejection of Dr. Gorsky's opinion in these areas. See Trevizo, 871 F.3d at 675.[10]

The ALJ's determination that Dr. Gorsky's opinion was not supported by the medical evidence of record, (see AR 21) failed to specify what mental health records (i.e., treatment notes) were considered and/or were inconsistent with Dr. Gorsky's opinion that Plaintiff had marked limitations in her ability to perform at a consistent pace without more than regular breaks in a workday, to sustain an ordinary routine without special supervision, and to respond appropriately to changes in a routine work setting. See Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)(the ALJ must "set[] out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation

---

[10] Plaintiff does not appear to be challenging the ALJ's assessment of Dr. Gorsky's opinion about Plaintiff's moderate limitations in the ability to understand, remember and carry out detailed instructions, to make judgments on simple work-related decisions, to maintain attendance and punctuality during a workday and workweek, and to interact appropriately with the public, supervisors and co-workers, and Plaintiff's marked limitations in the ability to make judgments on complex work-related decisions (see AR 1110-11). (See Joint Stip. at 5). The ALJ's RFC determination, specifically, that Plaintiff was (1) limited to simple, routine and repetitive tasks but not at a production rate of pace; (2) limited to simple work-related decision making; and (3) was able to interact frequently with supervisors and co-workers and occasionally with the general public, (see AR 24), appears to be consistent with Dr. Gorsky's opinion about Plaintiff's limitations in these areas.

9

thereof, and making findings"; citation omitted); Embrey v. Bowen, 849 F.2d 418, 421 (9th Cir. 1988)("To say that medical opinions are not supported by sufficient objective findings . . . does not achieve the level of specificity our prior cases have required . . . . The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors' are correct."; footnote omitted).

While Dr. Gorsky's treatment notes from April 16, 2015 through June 23, 2016 reflect mostly unremarkable mental status examination findings, except for sporadic auditory and/or visual hallucinations and limited or poor insight and judgment (see AR 519, 517, 515, 513, 511, 508), Dr. Gorsky's treatment notes for several months prior to and after the July 6, 2017 assessment (from November 2, 2016) reflect more serious mental status examination findings, including "[l]oud, hyperverbal tangential speech," "[d]ysphoric mood with labile affect," "[i]nappropriate familiar behavior," "[Plaintiff] was anxious, crying, laughing," "increased motor activity," "[f]air grooming and hygiene," "[t]hought content was marked by paranoia," and/or "[t]hought process was tangential." (See AR 505, 503, 501, 1137, 1135, 1133, 1130, 1128, 1126, 1124, 1160, 1158). The ALJ failed to consider whether these treatment notes supported or failed to support Dr. Gorsky's opinion.

Moreover, Dr. Gorsky's observations about Plaintiff's mental status and her current level of functioning in the July 6, 2017 evaluation - that Plaintiff "often felt paranoid and suspicious of others," "often appears with labile affect (loud, talkative, laughing, crying spells, dancing to herself at times, humming a song to herself, etc.)," "appears

anxious and nervous, has pressured speech, experiences periods of auditory and visual hallucinations," "is easily distracted, short attention span, and is unable to complete her task," "has trouble with concentration, pace and task completion," and "would have poor and inconsistent effort toward her work responsibilities." (see AR 1107-08) – do not appear to be inconsistent with Dr. Gorsky's opinion about Plaintiff's marked limitations in her ability to perform at a consistent pace without more than regular breaks in a workday, to sustain an ordinary routine without special supervision, and to respond appropriately to changes in a routine work setting. Indeed, Dr. Gorsky stated that his opinion was supported by his observations of Plaintiff's "[i]mpulsive behavior, unstable interpersonal relationships, paranoia, [and] hypervigilance," and the mental status examination findings discussed above. (AR 1111). See 20 C.F.R. § 416.927(c)(3)("The more a medical source presents relevant evidence to support a medical opinion, particularly medical signs and laboratory findings, the more weight we will give that medical opinion. The better an explanation a source provides for a medical opinion, the more weight we will give that medical opinion."); 20 C.F.R. § 416.927(c)(4) ("Generally, the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion.").

The ALJ also determined that Dr. Gorsky's opinion deserved "little weight" because Dr. Gorsky did not address Plaintiff's history of medication noncompliance, noting that Plaintiff occasionally had been noncompliant with her prescribed psychotropic medication (AR 21). (See AR 508 [June 23, 2016, notation that Plaintiff was off her medications, apparently, Abilify 15 mg, Lithium 300 mg and Seroquel 50 mg, see AR

515, 513, 511, for one month], 1137 [March 28, 2017, notation that Plaintiff was unclear about medication compliance], 1128 [January 23, 2018, notation that Plaintiff reported being off her oral medications, apparently, Lithium 300 mg and Seroquel 200 mg, see AR 1133, 1130] for two months]).

However, these notations, along with earlier treatment notes about Plaintiff's poor adherence to treatment (see AR 519, 517), and the fact that Plaintiff was prescribed Abilify injections starting on March 28, 2017, see AR 1137, suggest that Dr. Gorsky *was aware* of Plaintiff's medication noncompliance. The ALJ failed to indicate how Dr. Gorsky's alleged non-consideration of Plaintiff's medication noncompliance affected Dr. Gorsky's opinion or consider whether Plaintiff's medication noncompliance may have been a symptom of her mental illness. See Wake v. Comm'r of Soc. Sec., 461 Fed.Appx 608, 609 (9th Cir. 2011)(noting that the claimant's failure to comply with treatment may be a symptom of her bipolar disorder); see also Nguyen v. Chater, 100 F.3d 1462, 1465 (9th Cir. 1996)("[I]t is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation."; citation omitted).

Finally, the ALJ determined that Dr. Gorsky's opinion was entitled to less weight because Dr. Gorsky did not address Plaintiff's history of substance abuse. The ALJ noted that the record contained three treatment notes that reported Plaintiff's abuse of alcohol or marijuana, (see AR 503 [January 31, 2017, notation that Plaintiff "presented alcohol intoxicated, admitted that she drank this morning], 1133 [June 23, 2017, notations that Plaintiff "admitted drinking alcohol last

night" and "smell[ed] of alcohol], and 1126 [March 1, 2018, notations that Plaintiff admitted using cannabis to help with her jitteriness and presented with the "strong smell of cannabis"]), and records -- an Adult Mental Status Exam Report and Adult Substance Use Abuse Assessment prepared by a licensed social worker on November 3, 2016, and Dr. Gorsky's treatment notes on August 29, 2017 and May 17, 2018 -- reflecting that Plaintiff denied current hallucinations and current alcohol and marijuana use. (AR 21-22). (See AR 471-74, 1130, 1160).

However, the ALJ failed to state how Dr. Gorsky's alleged non-consideration of Plaintiff's substance abuse affected Dr. Gorsky's opinion. Dr. Gorsky clearly was aware of Plaintiff's alcohol and drug abuse based on treatment records and the diagnosis of cannabis use disorder/alcohol use disorder (AR 1109), and his opinion about Plaintiff's limitations expressly excluded limitations from Plaintiff's alcohol and/or drug abuse (AR 1110). It is not clear whether the ALJ considered Plaintiff's statement, in the January 31, 2017 treatment note, that her drinking followed after she was almost killed by a friend (see AR 503) or Plaintiff's statements in several treatment notes concerning her limited or reduced consumption of marijuana and alcohol (see AR 517, 515, 513, 511, 508, 505, 501, 1124, 1128, 1124, 1158). Moreover, although the ALJ identified treatment records dated November 3, 2016, August 29, 2017, and May 17, 2018, that "suggest improvement in [Plaintiff's] functioning" (AR 22), it is unclear whether the ALJ took into account that those same records also reflected Plaintiff's mental health symptoms, including unimpaired and loud speech, paranoid thought content, and limited insight and judgment. (AR 471, 1130, 1160).

The ALJ was not permitted to select a limited number of records as a basis to challenge Dr. Gorsky's opinion. See Holohan, 246 F.3d at 1205 ("[The treating physician's] statements must be read in context of the overall diagnostic picture he draws.  That a person who suffers from severe panic attacks, anxiety, and depression makes some improvement does not mean that the person's impairments no longer seriously affect her ability to function in a workplace."); see also Garrison, 759 F.3d at 1017 ("Cycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working."; and "Reports of 'improvement' in the context of mental health issues must be interpreted with an understanding of the patient's overall well-being and the nature of her symptoms.").

Accordingly, the ALJ failed to provide clear and convincing reasons, supported by substantial evidence in the record, for giving little weight to Dr. Gorsky's opinion about Plaintiff's ability to perform at a consistent pace without more than regular breaks in a workday, to sustain an ordinary routine without special supervision, and to respond appropriately to changes in a routine work setting little weight.[11]

---

[11] Given this finding, the Court finds it unnecessary to address Plaintiff's claim - which Defendant did not address - that the ALJ's five-step sequential analysis was improper because the ALJ factored Plaintiff's alcohol and drug abuse contribution at Step 3 to the disability determination.  (See Joint Stip. at 8, 14).

**D.    Remand Is Warranted**

The decision whether to remand for further proceedings or order an immediate award of benefits is within the district court's discretion. Harman v. Apfel, 211 F.3d 1172, 1175-78 (9th Cir. 2000).  Where no useful purpose would be served by further administrative proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits.  Id. at 1179 ("[T]he decision of whether to remand for further proceedings turns upon the likely utility of such proceedings.").  However, where, as here, the circumstances of the case suggest that further administrative review could remedy the Commissioner's errors, remand is appropriate.  McLeod v. Astrue, 640 F.3d 881, 888 (9th Cir. 2011); Harman, 211 F.3d at 1179-81.

Since the ALJ failed to properly assess Dr. Gorsky's opinion as a treating source, remand is appropriate.  Because outstanding issues must be resolved before a determination of disability can be made, and "when the record as a whole creates serious doubt as to whether the [Plaintiff] is, in fact, disabled within the meaning of the Social Security Act," further administrative proceedings would serve a useful

purpose and remedy defects.[12] Burrell v. Colvin, 775 F.3d 1133, 1141 (9th Cir. 2014).

**ORDER**

For the foregoing reasons, the decision of the Commissioner is reversed, and the matter is remanded for further proceedings pursuant to Sentence 4 of 42 U.S.C. § 405(g).

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: March 25, 2021

/s/
ALKA SAGAR
UNITED STATES MAGISTRATE JUDGE

---

[12] To the extent there was any ambiguity in Dr. Gorksy's opinion about Plaintiff's ability to perform at a consistent pace without more than regular breaks in a workday, to sustain an ordinary routine without special supervision, and to respond appropriately to changes in a routine work setting, the ALJ should, on remand, further develop the record to resolve any conflicts or ambiguities. See Diedrich v. Berryhill, 874 F.3d 634, 638 (9th Cir. 2017)("The ALJ is responsible for studying the record and resolving any conflicts or ambiguities in it."); and Celaya v. Halter, 332 F.3d 1177, 1183 (9th Cir. 2003)(the ALJ has the "special duty to fully and fairly develop the record and to assure that the claimant's interests are considered . . . even when the claimant is represented by counsel.").

16